James P. MITCHELL, Secretary of Labor, Plaintiff, Appellant,

v.

Calvin STINSON, d.b.a. Stinson Canning Company, etc., Defendant, Appellee.

Calvin STINSON, d.b.a. Stinson Canning Company, etc., Defendant, Appellant,

v.

James P. MITCHELL, Secretary of Labor, Plaintiff, Appellee.

Nos. 4845, 4846.

United States Court of Appeals First Circuit.

Dec. 3, 1954.

Herbert T. Silsby, II, Ellsworth, Maine, for Calvin Stinson, d. b. a. Stinson Canning Co., etc.

Bessie Margolin, Chief of Appellate Litigation, Washington, D. C., with whom Stuart Rothman, Sol., Harold S. Saxe, Atty., Washington, D. C., Thomas L. Thistle, Regional Atty., Melrose, Mass., and Albert H. Ross, Atty., Regional Office, Boston, Mass., were on the brief, for James P. Mitchell, Secretary of Labor.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

These are cross appeals from a judgment entered by the United States District Court for the District of Maine on February 25, 1954, 119 F.Supp. 268, ordering that the defendant, Calvin Stinson, be permanently enjoined from violating the provisions of Sections 15(a), (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 215 (a) (1, 2, 5). In the opinion which was joined with the order in this judgment the court held the defendant's employees who had been engaged in transporting other employees to and from work were within an exemption to the maximum hours provisions of the Fair Labor Standards Act but that the defendant's office employee, "dead season" employees and watchmen-firemen employees were not within the maximum hours exemptions and therefore were entitled to the full protection of the Act. The plaintiff appealed from that portion of the judgment dealing with the employees engaged in transporting other employees to and from work, and the defendant appealed from that portion of the judgment dealing with the "dead season", office and watchmen-firemen employees.

A stipulation as to most of the material facts was presented to the district court which also made other findings of fact.

The defendant is engaged in the canning, sale and distribution of sardines at Prospect Harbor and Southwest Harbor in Maine. His plants and facilities include fishing boats, dock facilities, pumping equipment to pump sardines from the boats into the plants, canning or packing rooms, cooking facilities, storage facilities, trucks and busses. The perishable nature of sardines requires that they be processed within a short time after being caught. The defendant employs approximately 280 workers during the canning season which extends from May to November. No canning operations are carried on during the dead season which extends from November to May.

The district court concluded that packers who performed the actual physical operations of the canning process were excluded from the coverage of the maximum hours provisions of the Fair Labor Standards Act, and the plaintiff has not appealed from this part of the judgment.

The defendant also employed watchmen-firemen who alternately worked a 12 hour shift seven days one week and a 12 hour shift seven nights the next week. Their duties on the night shift included patrolling the outside of the plant and safeguarding it from fires, intrusions and perils of the night. These employees while on the day shift performed only the functions of firemen and in this capacity tended fires and furnished steam used both for cooking fish and, when the weather demanded, heating the plant. The district court found that watchmen-firemen, who are employed throughout the year, are entitled to the full coverage of the Act except when working as firemen on the day shift during the canning season.

Also working throughout the year are employees designated as laborers who during the canning season assist in bailing fish from one bin to another, placing the fish in the cooking and drying room, transporting the fish from the drying room to the conveyor belt, supplying the packers with cans, transporting packed cans to the sealing machines and packing the sealed cans into cases for shipment. It was stipulated that the laborers also performed general maintenance work on the building and equipment during the canning season. Despite the fact that this maintenance work done by the laborers was not segregated from that part of their work which was more closely related to the actual canning operations, the court found that during the canning season they were exempt from the coverage of the maximum hours provisions of the Act, and the plaintiff has not appealed from this finding. During the dead season these laborers fixed floors, prepared the conveyor equipment, painted and performed general repair, maintenance

and clean up work in the plant. The district court found that these laborers were entitled to the full coverage of the Act during the dead season.

The defendant also employs an office employee throughout the year who maintains employment, social security, payroll and other records, She also makes out bills of lading for shipments, records the packing tickets and time cards of employees and makes up the payroll. The district court found the services of this employee were not so directly and closely related to the movement of the product from a perishable to a nonperishable state as to bring her within the exemption.

The last group of employees with whose status under the Act we are concerned are those employees who operated busses which carried other employees to and from work. It is necessary for the defendant to supply busses and drivers because of the lack of any public transportation system in the rural area in which the canning plants are located. The bus drivers apparently live at the farthest distance from the plants and keep the busses at their homes when not working. When notified of work they drive to the plant picking up workers on the way. This process is reversed at the end of the day's work. These drivers perform production work while at the plant but their bus driving activities constitute more than 20% of their working time. The lower court found that the work of the bus drivers was so directly and closely related to the movement of the perishable product to a non-perishable state as to be essential to such movement and that such workers are not entitled to the benefits of the maximum hours provisions of the Act.

The defendant admits that all his employees are engaged in the production of goods for commerce. This being the case, his employees are entitled to the full protection of the Act[1] unless specifically and expressly exempted by the Act from the minimum wages or maximum hours provisions or both.

Defendant contends that all his employees are engaged in "canning" fish and that they are exempt from the overtime provision of the Act by virtue of 29 U.S.C.A. § 213(b) (4), 63 Stat. 917, which is as follows:

"The provisions of section 207 of this title shall not apply with respect to

" * * * any employee employed in the canning of any kind of fish, shellfish, or other aquatic forms of animal or vegetable life, or any byproduct thereof; * * *."

The district court found that the dead season workers, firemen-watchmen and office employee were not employed in the canning of fish and do not come within the above exemption so as to excuse the defendant from compliance with the maximum hours requirements of § 207.

The defendant's argument is based on the premise that Congress passed the original exemption provision relating to the fishing industry in order to exempt the entire industry from the minimum wage as well as the overtime provisions of the Act. This exemption as set forth in 52 Stat. 1067 (1938) reads as follows:

" * * * any employee employed in the catching, taking, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life, including

---

**1.** "§ 206. *Minimum wages; effective date*

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—* * *." 29 U.S.C.A. § 206(a), 52 Stat. 1062.

"§ 207. *Maximum hours*

"(a) Except as otherwise provided in this section, no employer shall employ

any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. * * *." 29 U.S.C.A. § 207(a), 63 Stat. 912.

the going to and returning from work and including employment in the loading, unloading, or packing of such products for shipment or in propagating, processing, marketing, freezing, canning, curing, storing, or distributing the above products or byproducts thereof; * * *." 29 U.S.C.A. § 213(a) (5). (1947 ed.)

This provision was construed in Mc-Comb v. Consolidated Fisheries Co., 3 Cir., 1949, 174 F.2d 74, as exempting from the minimum wage and overtime provisions all employees employed in the fishing industry. In 1949 after the Consolidated Fisheries decision, Congress without mentioning that case amended the above statute by deleting the word "canning" therefrom and inserting after the word "processing" the words "(other than canning)". A new clause (4) was added to subsection 213(b) which exempted from the maximum hours requirements of the Act "any employee employed in the canning of any kind of fish, shellfish, or other aquatic forms of animal or vegetable life, or any by-product thereof". 29 U.S.C.A. § 213(b) (4), 63 Stat. 917.

The defendant contends that just as the original provision was held to exempt the entire fishing industry from the requirements of the minimum wages and maximum hours provisions of the Act so this amendment was intended to exempt the entire fish canning industry from the maximum hours provision. We reject defendant's contention that all employees of the fish canning industry are exempt under § 213(b)(4).

■ In construing the exemptions from the coverage of the Act we must bear in mind that Congress intended it to be a remedial statute, 29 U.S.C.A. § 202, 52 Stat. 1060, as amended 63 Stat. 910 and "Any exemption from such humanitarian and remedial legislation must * * * be narrowly construed, * *" and applied only to those "* * * plainly and unmistakably within its

terms and spirit * * *." Phillips, Inc., v. Walling, 1945, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095. "The Act declared its purposes in bold and sweeping terms. Breadth of coverage was vital to its mission. * * * Where exceptions were made, they were narrow and specific." Powell v. United States Cartridge Co., 1950, 339 U.S. 497, 516, 517, 70 S.Ct. 755, 766, 94 L.Ed. 1017.

■ Upon examination of the exemption contained in § 213(b)(4) and upon comparison of it with the other exemptions contained in § 213 it can be seen that the language of the exemptions is not parallel. The difference in terminology employed by Congress strongly indicates that Congress differentiated as to whether employees were to be exempt because they were employed by a particular employer, employed in a particular capacity, employed in a particular industry, or employed in connection with a particular industry. Thus, where the words "any employee of a carrier by air * * *"; "any employee employed by any retail or service establishment * * *"; "any employee of a street, suburban, or interurban electric railway * * *"; and "any employee of an employer engaged in the business of operating taxicabs" are used, it is the nature of the employer's business which is determinative as to whether or not a particular employee is to be included within the exemption. Similarly Congress intended that more than the physical operations of the employee should be considered when it used such language as "any employee employed * * * in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways * * *" and "any employee employed in connection with the publication of any weekly, semiweekly, or daily newspaper * * *." But when Congress used such language as "any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman * * *"; "any employee employed in the catching,

taking, harvesting, cultivating, or farming of any kind of fish * * *"; "any switchboard operator * * *"; "any employee employed as a seaman * * *"; "any employee employed in planting or tending trees, cruising, surveying, or felling timber * * *"; and "any employee employed in the canning of any kind of fish, shellfish or other aquatic forms of animal or vegetable life, or any byproduct thereof"; it did not intend that the employee's status would be determined by the business of the employer, but rather that whether or not the employee was exempt depended on the capacity in which the particular employee was acting.

In connection with the "seaman" exemption, it was said in Walling v. W. D. Haden Co., 5 Cir., 1946, 153 F.2d 196, 199:

"But the words of the exemption are: 'Employees *employed as* seamen'. The italicized words mean something; they are not mere tautology. They warn us to look to what the employees do, and not to rest on a mere matter of a name, or the place of their work. The entire Act is pervaded by the idea that what each employee actually does determines its application to him. He himself must be engaged in commerce, or in producing goods for commerce, to come under the Act; and in most of the exemptions, as in this one, what he does is expressly made the test of exclusion. * * "

We agree with the reasoning expressed in the above quoted language and think that it is applicable in construing the exemption involved in the instant case. The decision reached by the court in the Haden case, supra, is in contrast with the result reached in the earlier case of Waller v. Humphreys, 5 Cir., 1943, 133 F.2d 193, which dealt with the exemption relating to the fishing industry prior to the 1949 amendment. In that case the court said, at page 194 that " * * * Congress made a very broad exemption from

the Act which applies here * * *" and held that certain watchmen whose duties were to watch the premises, to raise the steam on the boilers in the event fishing vessels returned to port, to notify other employees of the necessity of processing the fish by blowing the plant's whistle, and to cool and clean the boilers after the day's work and mix brine for the processing were employed in processing and curing the fish. The watchmen in the instant case did not have duties so closely related to the actual processing of fish as did the watchmen in the Waller case, and thus the facts of the Waller case are not on all fours with the facts here. But we think that the court in the Waller case misunderstood the intent of Congress when it held that because the watchmen's work was necessary to the processing or curing of fish they were included in an exemption limited to employees *employed* in processing or curing fish. This misunderstanding would not have resulted if the court had construed this exemption bearing in mind the intent of Congress as elucidated in Walling v. W. D. Haden Co., supra, when it enacted this remedial legislation.

In McComb v. Consolidated Fisheries Co., supra, the court held that a cook, a night watchman, an office employee, and several carpenters and maintenance men were not subject to the Act as it was the purpose of the original exemption relating to the fishing industry to exempt all employees employed in the fishing industry hired by an employer engaged in the fishing operations listed in the Act if the services of these employees were necessary to the conduct of such operations. This conclusion does not seem to be in accord with the statement of Congressman Bland in introducing the exemption as it appeared in the original Act, when he said: "This amendment is not the same. In the last amendment I was trying to define the fishery industry. I am now dealing with those persons who are exempt * * *." 83 Cong.Rec. 7443. The words "last amendment"

refer to a previously proposed and rejected amendment which attempted to define this industry. While it is true that both the Senate and House originally each passed bills which exempted from the maximum hours coverage employees who, in the Senate version, were "employed in connection with the * * * canning or other packing or packaging of fish, seafoods, sponges * * * when the services of such person are of a seasonal nature" and in the House version " * * * employees in any place of employment * * *" where the employer was " * * * engaged in the first processing of or in canning fresh fish or fresh seafood * * *," both these bills were dropped by the Conference Committee which adopted the House provision proposed by Congressman Bland. McComb v. Consolidated Fisheries Co., D.C.Del.1948, 75 F.Supp. 798, 806, affirmed 3 Cir., 174 F.2d 74. The reasoning of the court of appeals in the McComb case, at page 77 that the word "employed" in the phrase "employee employed in the catching, taking * * *" is in the sense of being hired rather than in the sense of being engaged in a particular physical activity is not persuasive. If the exemption read "employee employed in the fishing industry" such construction would be more tenable but in the statute as passed the word "employed" is modified by words denoting physical activities, e. g. "catching, taking, harvesting, cultivating, or farming * * * propagating, processing, marketing, freezing, canning, curing * * *." If Congress had intended to exempt all employees in the industry rather than those taking part in certain specified operations it undoubtedly would have expressly referred to the industry rather than to the specified operations when it defined which employees were included in the exemption.

■ The statutory exemption involved in the instant case is not the same one that was construed in McComb v. Consolidated Fisheries Co., supra. While it could be said in support of the decision in that case that Congress apparently attempted to include all the physical operations involved in the fishery industry and thus in effect include all employees whose services were necessary to such industry no such extensive catalogue of activities is made in the fish canning amendment of 1949.

Moreover in the conference report accompanying this amendment Congress specifically indicates what operations are included in the canning process. Conf. R. No. 1453, 81st Cong. 1st Sess. (1949), U.S.Code Cong.Serv.1949, Vol. 2, p. 2268:

" * * * Under the conference agreement 'canning' means hermetically sealing and sterilizing or pasteurizing and has reference to a process involving the performance of such operations. It also means other operations performed in connection therewith such as necessary preparatory operations performed on the products before they are placed in bottles, cans, or other containers to be hermetically sealed, as well as the actual placing of the commodities in such containers. Also included are subsequent operations such as the labeling of the cans or other containers and the placing of the sealed containers in cases or boxes whether such subsequent operations are performed as a part of an uninterrupted or interrupted process. It does not include the placing of such products or by-products thereof in cans or other containers that are not hermetically sealed as such an operation is 'processing' as distinguished from 'canning' and comes within the complete exemption contained in section 13(a)."

■ This would indicate that Congress intended that only those employees engaged in operations physically essential in the canning of fish, such as cutting the fish, placing it in cans, labelling and packing the cans for shipment are

in the exempt category but it would not indicate that Congress intended to exempt employees who drove the packers to work or who watched the premises at night or who kept payroll records in the office. It is necessary here as it is in most cases involving the Fair Labor Standards Act to draw a line. The line to be drawn here is to separate employees producing goods for interstate commerce into two groups, one of which groups is composed of employees employed in the canning of fish and the other is of employees employed in occupations or activities closely related and directly essential to the canning of fish but which can not be said to be part of the canning operations.

The defendant has stated that all his employees are engaged in the production of goods for commerce. Since this ultimate fact was accepted by the district court and no appeal has been made therefrom we are not called upon to decide whether any of the defendant's employees are not engaged in the production of goods for commerce.

■ Because the functions of the firemen-watchmen, dead season employees, and office employee are not parts of the canning process, the district court was correct in holding that such employees do not come within the exemption provided in § 213(b)(4).

■ We do not agree with the reasoning of the district court in its decision that the work of the bus drivers is so essential to the canning process that they are included within the exemption. The work of the dead season employees could be considered essential for if the plant was not kept in proper repair the canning process could not be carried on. The work of the office employee in preparing bills of lading, etc. could be said to be similarly essential to the defendant's fish canning business. Yet the district court found, and we have affirmed the correctness of that finding, that such employees are not included within the fish canning exemption. We can find

nothing in the activities of these bus drivers which can be said to be a part of the canning process. It is true that the time when the bus drivers perform their driving duties is determined by the time when the fishing vessels return from a trip. That is, if at any time of day a vessel arrives with a load of sardines at the defendant's dock, the bus driver must pick up the other employees shortly thereafter in order that the sardines may be processed before spoiling, and if necessary these employees, the packers, must work overtime in order to complete such processing.

■ The exemption under § 213(b)(4) was provided by Congress so as to allow this processing to be carried out as the circumstances determined. But in order for the processing to be carried out it is not necessary that the bus drivers, in their capacity as bus drivers, work more than four hours a day. The fact that the commencement of canning operations is dependent upon the arrival of the fishing vessels is not a basis for exempting bus drivers, whose services also commence at that time, from the coverage of the Act. The length of their working day, as far as their bus driving duties are concerned, is in no way related to the necessity for immediate processing and the whims of nature as is the length of the working day of the packers, laborers and firemen. The district court, relying on an official administrative interpretation, has indicated that employees will not be included within an exemption if more than 20% of their work is of a non-exempt nature. Since more than 20% of the bus drivers' work week was occupied with bus driving activities, which we have held are not exempt under § 213(b)(4), these employees are entitled to the full benefits of the Act for the entire work week.

The order of the United States District Court for the District of Maine is vacated and the case is remanded to that court for entry of a more specific order in conformity with this opinion.