239 F.2d 484
 James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,
v.
E. E. BURGESS and M. E. Burgess, doing business as Coy Gin Co., and Ruben Compton and Harold Coggins, doing business as Coy Delinting Co., Appellees.
 No. 15596.
 United States Court of Appeals Eighth Circuit.
 December 21, 1956.
 
 Sylvia S. Ellison, Atty., United States Department of Labor, Washington, D. C. (Stuart Rothman, Solicitor, Bessie Margolin, Asst. Solicitor, Harry A. Tuell, Washington, D. C., Attorney, and Earl Street, Regional Atty., Dallas, Tex., for United States Department of Labor, on the brief), for appellant.
 Phillip Carroll, Little Rock, Ark. (Rose, Meek, House, Barron & Nash, Little Rock, Ark., on the brief), for appellees.
 Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.
 WHITTAKER, Circuit Judge.
 
 
 1
 The Secretary of Labor sought to enjoin the operators of the Coy Delinting Co. of Coy, Arkansas (who proved to be only, appellees, Compton and Coggins), from failing to comply with the minimum wage provisions of Section 6, Section 206, Title 29, U.S.C.A., and with the record keeping provisions of Section 11 (c), Section 211(c), Title 29, U.S.C.A., and with the shipment provisions of Section 15(a) (1), Section 215(a) (1), Title 29, U.S.C.A., of the Fair Labor Standards Act.
 
 
 2
 The District Court, upon a trial without a jury, found that appellees, Compton and Coggins, were engaged in commerce or in the production of goods for commerce, and were, therefore, within the general coverage of the Act, and it entered judgment enjoining them from failing to comply with the record keeping provisions of Section 11(c) of the Act, but it refused to enjoin them from failing to comply with the minimum wage provisions of Section 6, and the shipment provisions of Section 15(a) (1), of the Act, upon the ground that they and their employees were exempted therefrom by the provisions of Section 13(a) (10) of the Act, Section 213(a) (10), Title 29, U.S. C.A., and the Secretary has appealed from that judgment.
 
 
 3
 The question presented is whether the function of preparing cottonseed for planting purposes by separating short cotton fibers from the cottonseed, for farmers, in the area of production, falls under the statutory label of "processing of cottonseed", as contended by appellant [which would exempt appellees, and their employees, only from the maximum hours provisions of the Act, under Section 7(c)], or falls under the statutory label of "ginning", as contended by appellees and as found by the Court [which would exempt appellees, and their employees, from both the minimum wage provisions of Section 6, and the maximum hours provisions of Section 7, of the Act, under the terms of Section 13(a) (10)].
 
 
 4
 Coy, Arkansas, as described in the argument, is a "wide place in the road" in a cotton producing area, and consists of three ordinary cotton gins, appellees' delinting gin, and a general store.
 
 
 5
 Ordinary ginning does not separate all of the cotton fibers from the seed, but leaves varying amounts of the shorter cotton fibers adhering thereto. Cotton farmers, in the Coy area, retain enough of their seed, with the short cotton fibers thereon as it came from an ordinary gin, for planting next year's crop, but they find that the remaining short cotton fibers prevent the seed from going evenly through the planters and also delay germination of the seed, and so it is necessary for them to remove, or have removed, those short cotton fibers from their planting seed.
 
 
 6
 To serve this purpose, appellees, Compton and Coggins, in 1952, leased an old gin building in Coy, and purchased and installed therein a machine, commonly called a delinting machine, designed for the separation of the short cotton fibers, left in ordinary ginning, from the cotton seed, and they began doing business with, and only with, local cotton farmers. These local farmers select that part of their seed, with the short cotton fibers thereon, which they intend to plant in the next season and bring the same to appellees, who, by the use of the machine mentioned, separate the short cotton fibers from the seed, and screen the seed (thereby removing undersized and defective seeds) and, if the farmer so requests, spray it with a chemical disinfectant (to minimize disease), for a consideration, paid by the farmers, of 20¢ per bushel of seed — which the farmer takes home with him — plus retention of the short cotton fibers (useful for padding and stuffing purposes) separated from the seed by appellees, which they bale, in said machine, and sell in commerce (at about 4¢ per pound — whereas the price of long cotton fibers is about 30¢ per pound), which, in turn, is the commerce that brings them within the general coverage of the Act.
 
 
 7
 Appellees handle cottonseed only for local farmers, and solely in the manner stated, and they do not in any way handle, and never have handled, cottonseed which is to go to cottonseed oil mills for processing or manufacture.
 
 
 8
 A delinting machine and a ginning machine are very similar, though the feeder mechanisms are somewhat different and the saws are set closer together in a delinting machine than in a ginning machine and the former is run at higher speeds than the latter, yet, as testified by appellees, "the basic operation of the two is the same", and delinting "is the same process as ginning, carried further", but it would not be economic to run long fiber cotton through a delinting machine because the closer saws and higher speeds would sever the long fibers and impair their utility and value.
 
 
 9
 The District Court found that the function performed by appellees differs from normal ginning only in the length of the cotton fibers removed from the cottonseed, and "is merely a second ginning of cotton", and is not "the processing of cottonseed", and, as above stated, he concluded that appellees' employees were exempted from both the minimum wage provisions of Section 6, and the maximum hours provisions of Section 7, of the act, and that, hence, appellees were also exempted from the shipment provisions of Section 15(a) (1) of the Act, by the specific provisions of Section 13(a) (10) of the Act.
 
 
 10
 Though appellant concedes that employees engaged in "ginning" are exempted from both the minimum wage provisions of Section 6 and the maximum hours provisions of Section 7, of the Act by the provisions of Section 13(a) (10) of the Act, he contends that the function performed by appellees amounts to "the processing of cottonseed", within the meaning of that phrase as used in Section 7(c) of the Act, and that, therefore, appellees' employees are exempted only from the maximum hours provisions of that section. Therefore, as stated, the sole question here is whether the function performed by appellees amounts to "the processing of cottonseed" within the meaning of that phrase as used in Section 7(c) of the Act.
 
 
 11
 We believe that it does not. Rather, we think that Congress, in the use of that phrase in Section 7(c) of the Act, was contemplating the manufacturing steps and processes involved in producing cottonseed oil, and cottonseed cake and cottonseed meal, which consist, in brief, of cleaning the hulls (of any remaining lint and foreign matter), separating the hulls from the kernels, cooking the kernels, pressing the oil from the cooked kernels, and breaking the remaining pulp into small pieces for cottonseed cake, or grinding it into cottonseed meal. See Abram v. San Joaquin Cotton Oil Co., D.C.S.D.Cal., 49 F.Supp. 393, 401.
 
 
 12
 As well said by the Court in the case last cited, in dealing with this phrase, as used in this section:
 
 
 13
 "`The term, "processing of cottonseed" is descriptive of an industry, to wit, that industry which is engaged in producing cottonseed oil and the byproducts of the oil making operations, i. e., cake and meal.'"
 
 
 14
 The same conclusion was reached in an earlier treatment of the same case, D.C., 46 F.Supp. 969, 972, and again in Heaburg v. Independent Oil Mill, D.C., 46 F.Supp. 751, 753, 754. Indeed, such has consistently been the construction of the administrator of this Act. In his interpretative bulletin No. 14, paragraph 17, originally issued August 21, 1939, WHM 35:351 et seq., in referring to "processing of cottonseed", it is stated: "This term includes cleaning and removing hulls and linters from the cottonseed, extracting oil therefrom and making cottonseed cake or meal". (Emphasis supplied.) Again, in defining the meaning of the term "ginning", the administrator stated, in paragraph 29 of his interpretive bulletin No. 14 (WHM 35:364), "* * * `Ginning' involves the operation of removing the seed from the lint and then pressing and wrapping the bale of lint. It does not include other operations which may be performed on the cottonseed or the cotton lint, even though such operations are performed in the same establishment where the ginning is done. For example, it does not include the processing of cottonseed". (Emphasis supplied.)
 
 
 15
 Appellant points to the well settled principle that such administrative interpretations are entitled to great weight, and argues that, under those applicable here, the functions performed by appellees constitute the processing of cottonseed. We disagree. We think the quoted administrative interpretations show the contrary. We think this because, though appellees remove short cotton fibers from the seed, and in that sense clean it, they do this only upon planting seed and only for farmers in the area of production, and never upon commercial cottonseed destined to an oil mill, nor as a step incident to oil mill processing (a step which, if performed upon commercial cottonseed destined, or to be destined, to a cottonseed oil mill, might make a difference — a question we do not decide); nor do appellees remove the hulls from the kernels or extract oil therefrom, or perform any operation "on the cottonseed or the cotton lint", but they merely separate the two and do not in any way change the identity of either from natural state.
 
 
 16
 Certainly Congress could not have contemplated, when it used the questioned phrase in Section 7(c) that a cotton farmer, in removing short cotton fibers, left by ordinary ginning, from his planting seed, would be engaged "in the processing of cottonseed". Having it done by others, because he lacked the equipment to do it himself, would not change the function nor deprive such others, or their employees, from the exemptions of the Act, Maneja v. Waialua Agricultural Co., 349 U.S. 254, 268, 75 S.Ct. 719, 99 L.Ed. 1040.
 
 
 17
 Neither the term "ginning" nor the term "delinting" is really definitive of the function actually performed. Those terms are mere labels, and as said by the Supreme Court in the Waialua case, 349 U.S. at page 261, 75 S.Ct. at page 724, "Where a farmer thus uses extraordinary methods, we must look to the function performed."
 
 
 18
 When we look to the function performed by appellees, we see that they do two things, first, they remove (short) cotton fibers from cottonseed, and that operation is called "delinting". The operation of removing (long) cotton fibers from cottonseed is called "ginning". Surely, Congress did not intend a distinction depending upon the length of the cotton fibers removed from the seed. Congress did not intend one rule for the removal of long fibers and another for the removal of short ones. Yet, that is the only difference between the fiber removing operations performed by appellees and those performed in an ordinary gin, and hence, this phase of appellees' operation is "ginning"; second, appellees, after removing the short fibers from the seed, screen the seed — thus eliminating undersized and defective seeds — and then, if the farmer wishes, they will spray the seed with a germicide — all for the purpose of facilitating and aiding the planting and the germination of the seeds and minimizing the danger of disease to the plants. This is not "processing cottonseed" within the meaning of Section 7(c) of the Act.
 
 
 19
 We conclude that appellees are not engaged "in processing cottonseed" within the meaning of Section 7(c) of the Act, but, rather, are engaged in a species of "ginning" within the meaning of Section 13(a) (10) of the Act, and their employees are thereby exempted both from the minimum wage provisions of Section 6 and the maximum hour provisions of Section 7(c) of the Act, and, hence, appellees are exempted from the shipment provisions of Section 15(a) (1) of the Act, and that the judgment of the District Court was right and must be affirmed.
 
 
 20
 Affirmed.