W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

BURTON MERCANTILE AND GIN COMPANY, Inc., Defendant.

No. B–62–C–9.

United States District Court
E. D. Arkansas, N. D.

Dec. 3, 1963.

826

Charles Donahue, Sol., U. S. Dept. of Labor, Earl Street, Regional Atty., Dallas, Tex., Truett E. Bean, Trial Atty., for plaintiff.

Wayne Boyce of Pickens, Pickens & Boyce, Newport, Ark., for defendant.

HENLEY, Chief Judge.

This is an action brought by the Secretary of Labor under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., to enjoin the defendant from violating the minimum wage, overtime compensation, and record keeping requirements of the Act. Defendant is an Arkansas corporation which operates a store, a farm, and two cotton gins in Jackson County, Arkansas. The claimed violations are limited to employees of the gins. No coverage is asserted with respect to the farm or to the store.

Two classes of employees are involved: (1) Clerical employees, (2) Manual employees to the extent that they perform repair and maintenance work in and around the gins during the "dormant seasons" in which no cotton is actually being ginned; for convenience this group will be called "mechanical employees."

The plaintiff alleges that during 1960, 1961, and 1962, the involved employees were engaged in the production of goods for commerce [1] and were covered by the Act, and it is charged that defendant unlawfully failed to pay the statutory minimum wages or overtime compensation and that it failed to keep proper records of the employees' wages, hours, and other conditions of employment. It is further alleged that the violations are continuing, and that unless the defendant is enjoined as provided by section 17 of the Act, the alleged violations will continue in the future.

The defendant, while not contending that it has paid statutory wages or overtime compensation or that it has kept records which conform to the requirements of the Act, denies that it has been in violation of the Act. Alternatively, defendant alleges that if it has in fact violated the Act, its violations have been inadvertent.

In support of its denial of violations defendant relies primarily, albeit not exclusively, upon certain exemptions appearing in sections 13(a) (10) and 13(a) (18). The Secretary denies that the clerical employees are within the exemptions relied upon, and denies that the exemptions apply to the mechanical employees with respect to work done during the gins' dormant seasons, although he concedes that employees actually engaged in the "ginning of cotton" are exempt when the gins are in operation. In answer to the Secretary's contentions relative to the exemptions defendant urges that all of the involved employees are exempt the year round. In the alternative, defendant argues that if the Secretary's position relative to the exemptions is upheld, it will follow that the employees are not in fact engaged in the production of goods for commerce and hence are not covered by the Act.

The case has been submitted upon the pleadings, certain discovery material, written stipulations of fact, and memorandum briefs. The controlling facts are as follows:

A substantial part of the cotton ginned by defendants is warehoused at McCrory, Arkansas, and substantially all of the cotton so warehoused moves ultimately to points outside Arkansas.

Similarly, a substantial part of the cotton seed separated from the lint in the course of the ginning operation is sold to Southern Cotton Oil Co. at Newport, Arkansas, and substantially all of the oil extracted from such seed is transported in interstate commerce.

In Arkansas cotton begins to mature in the late summer and early fall, and the active ginning season runs from late in August or early in September of each year into January or February of the following year. From the end of one ginning season to the beginning of the next the gins are not in operation.

1. By "commerce" is meant interstate or foreign commerce.

While it is true that for a number of months in each year the gins are not ginning any cotton, it is necessary that the gin plants be cleaned, that the machinery be kept lubricated, that broken or worn-out parts be repaired or replaced, and that other types of maintenance work be done. Further, there is certain clerical work which has to be done in connection with defendant's ginning operation, even during the dormant seasons.

Prior to the adoption of the 1961 amendments to the Act, P.L. 87–30, 75 Stat. 71, Act of May 5, 1961, the exemption applicable to the cotton ginning industry was to be found in section 13(a)(10). That subsection, prior to the 1961 statute, provided an exemption from the minimum wage and overtime compensation provisions of the Act, and consequently from the record keeping provisions as well, of any individual employed "within the area of production * * * engaged in handling, packing, storing *ginning* * * * in their raw or natural state * * * agricultural commodities for market." (Emphasis added.)

When the Act was amended, section 13(a)(10) was rewritten so as to delete therefrom the word "ginning," and a new subsection, 13(a)(18), was added which provided an exemption for any employee "engaged in ginning of cotton for market, in any place of employment located in a county where cotton is grown in commercial quantities."[2]

As pointed out in Mitchell v. Stinson, 1 Cir., 217 F.2d 210, section 13 of the Act creates quite a number of exemptions. The applicability of some of those exemptions depends upon the activities of the employer; the applicability of others depends upon the duties or activities of the employees with respect to whom the exemption is claimed. Quite clearly, the exemptions with which the Court is concerned fall within the latter class. Neither section 13(a)(10) nor section 13(a)(18) purports to exempt an individual from the coverage of the Act merely because that individual is employed by a cotton ginner. Had the Congress intended so broad an exemption, it could have said so easily. Before an individual employee of a ginner is exempt from the coverage of the Act, that individual must be "engaged in ginning of cotton."

From what has just been said it follows that on this phase of the case the questions for decision are whether the clerical employees are at any time "engaged in ginning of cotton" and whether the mechanical employees are so engaged during the gin's dormant seasons.

It will have been observed that both section 13(a)(10) and section 13(a)(18) refer to "ginning," and the Administrator has consistently taken the view that the exemption is limited to those employees who are engaged in the actual ginning operations and does not extend to other gin employees such as watchmen and clerical employees.[3] And after the 1961 amendments the Administrator promulgated Part 780 of the Wage and Hour Regulations, 29 C.F.R., § 780. Regulation Part 780.509 is to the effect that employees engaged in the actual ginning operations, including the ginners and their helpers, pressmen, and any others whose work is so directly and physically connected with the ginning

2. Defendant relies on section 13(a)(10) as written before the amendment to establish the claimed exemptions prior to the effective date of the amendment, and upon section 13(a)(18) to establish the exemptions after the amendment became effective. There is no question that cotton is produced in commercial quantities in Jackson County. While the "area of production" requirement of section 13(a)(10) ceased to be of significance, as far as cotton ginners were concerned,

after the adoption of section 13(a)(18), it was significant prior to the 1961 Act, and it has been stipulated here that defendant's gins were and are located in an "area of production," as defined by the Administrator of the Wage & Hour Division of the Labor Department.

3. See in this connection Interpretative Bulletin No. 14 issued by the Administrator in 1939; see also the Administrator's Release M–9 issued in 1947.

process that it constitutes an integral part of its actual performance are exempt. Part 780.510, entitled "Employees not 'engaged in' ginning," is as follows:

"Since an employee must actually be 'engaged in' ginning of cotton to come within the exemption, an employee engaged in other tasks, not an integral part of 'ginning' operations will not be exempt * * *. Accordingly, section 13(a) (18) does not provide any exemption for office employees, watchmen, or other employees not directly or physically connected with the ginning process itself who are engaged in general maintenance work or custodial or clerical duties. Similarly, no employee employed in a cotton gin during the off-season when no ginning is being performed can come within the exemption because . he cannot then be engaged in ginning."

■ Mindful that the Act is a remedial statute and is to be construed liberally in favor of coverage, the Court cannot hold that the Administrator's interpretation of sections 13(a) (10) and 13(a) (18) as being limited to gin employees directly connected with the actual ginning process is unreasonable or contrary to the language of the statute. The Administrator's interpretation, as such, is entitled to at least some weight. Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786; Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Mitchell v. Burgess, 8 Cir., 239 F.2d 484; Walling v. Friend, 8 Cir., 156 F.2d 429; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633; Walling v. Reid, 8 Cir., 139 F.2d 323; Miller Hatcheries v. Boyer, 8 Cir., 131 F.2d 283. Further, it finds support in Jenkins v. Durkin, 5 Cir., 208 F.2d 941, and by analogy in Mitchell v. Stinson, supra.

Jenkins v. Durkin, supra, involved, among other things, the question of whether certain watchmen employed at a cotton gin and compressing plant came within the section 13(a) (10) exemption.

The trial court held that they did not, and the Court of Appeals affirmed on that point.

In Mitchell v. Stinson, supra, an exemption from the overtime provisions of the Act was claimed under section 13(b) (4) which was to the effect that those provisions should not apply to "any employee employed in the canning * * of any kind of fish, shellfish, or other aquatic forms of animal or vegetable life, or any byproduct thereof." The defendant operated a fish cannery and employed various classes of employees, including one office employee, certain dead season employees for repair and maintenance work, and certain watchmen-firemen. It was held that those categories of employees were not included within the exemption since they were not canning fish, although their work was "closely related and directly essential to the canning of fish but which (could) not be said to be part of the canning operations." (217 F.2d at 217.)

■■ As was the case with the office employee involved in Stinson, the defendant's clerical employees involved in this case, while performing work which is necessary and closely related, and indeed indispensable to the carrying on of defendant's ginning business, are not "ginning cotton;" they are keeping books, and the Court agrees with the Secretary that they are not within the exemption. Similarly, defendant's mechanical employees are not "ginning cotton" while they are repairing and working around the gins during the dormant seasons; hence, during those seasons they are not exempt.

The decision of the Supreme Court in Maneja v. Waialua Agricultural Co., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040, is instructive as far as defendant's mechanical employees are concerned. The defendant in that case operated an integrated sugar plantation and processing establishment in Hawaii. It raised its own sugar cane, transported it from the fields to its own mill over its own private railroad, and processed the cane into sugar. Like cotton gins, sugar mills have

dormant seasons in which no cane is being processed. Again, like cotton gins, the machinery and equipment of sugar mills have to be repaired and maintained during the dormant seasons. One of the issues in the case was whether and to what extent mechanical employees of Waialua fell within the overtime exemption of section 7(c) of the Act with respect to repair and maintenance work performed in and around the mill. In holding that they were not within the exemption the Supreme Court said (349 U.S. at 270, 75 S.Ct. at 728):

"Although the mill workers are not within the agricultural exemption, they are nevertheless exempt from the overtime provisions of the Act. Section 7(c) specifically provides that the overtime provisions of the Act shall not apply to 'an employer engaged in the * * * processing of * * * sugarcane * * * into sugar (but not refined sugar)', and this exemption extends to 'employees in any place of employment [where the processing is carried on].' This, we feel, covers the workmen during the processing season while making emergency repairs in the mill, cleaning the equipment during the weekend shutdown, and performing other tasks closely and intimately connected with the processing operation. Repair work on the mill equipment in Waialua's shops in the mill area is also within the exemption. * * During the three-month off-season, however, a complete overhaul and reconditioning is given the entire mill equipment and no processing work is performed. Since § 7(c) on its face covers only those employees who work in the place of employment where the processor *is so engaged,* we cannot extend its coverage so to include within the overtime exemption permanent repairs, overhaul and reconditioning during this three-month off-season. See Heaburg v. Independent Oil Mill, 46 F.Supp. 751; Abraham v. San Joaquin Cotton Oil Co., 49 F.Supp. 393. Cf.

Mitchell v. Stinson, 217 F.2d 210, 217 (C.A. 1st Cir.)."

Manifestly, if an operator of a sugar mill is not processing sugar during the mill's dormant periods, a cotton gin operator is not "ginning cotton" during the gin's off-season, and during that season the gin employees are not "ginning cotton" regardless of how necessary to the next season's operations their work may be.

In discussing the Waialua case counsel for defendant points out that the Court is not here concerned with the section 7(c) exemption, and he calls attention to the difference between the wording of section 7(c) and that of sections 13(a) (10) and 13(a) (18). The Court does not consider that this difference in wording is of controlling importance here. More than this, the section 7(c) exemption is broader than the section 13 exemptions here involved in that under section 7(c) all employees of a processing plant are exempt from the overtime compensation provisions of the Act provided that they are employed in a place where the processing is being carried on, whereas the section 13 exemptions on which defendant relies are limited to the specific employees who are engaged in the ginning of cotton.

From what has been said it follows that defendant's claims of exemption cannot be sustained. Nor can the Court accept defendant's alternative argument that if the employees are not "ginning cotton" during the times in question, they are not engaged in the production of goods for commerce.

Section 3(j) of the Act provides that an employee is to be deemed engaged in the production of goods for commerce if he is "employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." Although the clerical employees and the mechanical employees during the dormant seasons are not "gin-

ning cotton," they are doing work which is closely related to the actual ginning of cotton. Hence, they fall within section 3(j) and are covered, but, as stated, they do not fall within section 13(a) (10), as formerly written, or within section 13(a) (18) so as to be exempt.

Counsel contends that the purpose of the ginning exemption was to put small farmers who have to use commercial gins on an equal footing with large plantation owners who may do their own ginning with employees who fall within the general agricultural exemption found in section 13(a) (6) (Maneja v. Waialua Agricultural Co., supra, 349 U.S. at 268, 75 S.Ct. at 727), and that this Congressional purpose cannot be achieved unless all gin employees are exempt all the year round. This argument may not be lacking in economic merit, but it is more properly to be addressed to the Congress than to the courts.

Having found that the employees in question are covered by the Act and not exempt, except to the extent conceded by the Secretary and indicated previously, it follows that violations have been established and it remains to be considered whether an injunction should issue.

■■■ While the issuance of an injunction under the Fair Labor Standards Act rests within the discretion of the Court, that discretion is a judicial discretion and must be exercised in the light of the objectives of the Act. An injunction issued under section 17 is remedial and not punitive, and its issuance does not ordinarily unduly burden a defendant. See Mitchell v. Lublin, McGaughy and Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243; Mitchell v. Southwest Engineering Co., 8 Cir., 271 F.2d 427; Chambers Construction Co. v. Mitchell, 8 Cir., 233 F.2d 717; McComb v. Wyandotte Furniture Co., 8

Cir., 169 F.2d 766; Lenroot v. Interstate Bakeries Corporation, 8 Cir., 146 F.2d 325. And, where the legality of an employer's actions and practices remains in controversy under the Act, the Secretary is ordinarily entitled to an injunction where violations are shown, and where the violations persist at the time of trial and are not inadvertent, an injunction is clearly proper. McComb v. Wyandotte Furniture Co., supra; Tobin v. Keystone Manufacturing Co., W.D. Ark., 143 F.Supp. 231.

■■■ While the answer alleges that any violations of which defendant may have been guilty were "inadvertent," it is clear that such is not the case, although defendant's managing officers may have honestly believed that the employees in question were exempt. It has been stipulated that the managing officers and principal stockholders would testify to such belief, but the Secretary has declined to agree that such testimony would be true. Moreover, it has been stipulated that following an investigation of its operations in 1956 the defendant agreed to comply with the law and did in fact pay certain back wages to certain former gin employees. Defendant did not remain in compliance with that agreement; violations continued or were resumed; when the suit was filed defendant contended that the involved employees were either exempt or were not covered initially; there is nothing in the record to indicate that violations were suspended *pendente lite;* and there is no affirmative promise or assurance of future voluntary compliance with the law.

In the circumstances here present the Court is convinced that an injunction should issue and that refusal to enjoin defendant would constitute an abuse of discretion. An appropriate decree will be entered.