**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**MALTHOR, INC., a corporation doing business as Purity French Bakery, and Antonio Malfa, individually and as president of Malthor, Inc., Defendants.**

**Civ. No. 1685.**

United States District Court
D. Nevada.

March 30, 1966.

Supplemental Opinion May 20, 1966.

Mildred Y. K. Lau, Dept. of Labor, San Francisco, Cal., for plaintiff.

Samuel B. Francovich, Reno, Nev., for defendants.

THOMPSON, District Judge.

The Court reaffirms the Findings and Conclusions filed March 25, 1965 on the separate trial of the issue of whether or not defendants were engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act.

Further trial was held March 28, 1966 on the issues of the defendants' specific violations of the Fair Labor Standards Act, the amounts of unpaid minimum wages and overtime compensation due to employees, and the identity of any employees excluded from coverage under the Act.

Plaintiff's Exhibit 1 is a schedule prepared by the Government investigator naming sixty-six persons employed by defendants between May 7, 1962 and May 7, 1964, and as to each employee named, the period of employment, the number of hours involved in minimum wage violations, the number of hours involved in overtime violations, the hourly rate of pay, the minimum wages computed due, the overtime compensation computed due, and the total wages computed due. The Court finds said schedule to be true and correct and supported by the evidence. The Court finds that each of the employees named in Exhibit 1 was engaged in an activity substantially related to the production of goods for commerce, and that none of them falls within any of the statutory exemptions from coverage. True, as we found on March 25, 1965, only three and six-tenths per cent of the dollar value of defendants' gross production moved in interstate commerce, but this was sufficient to bring the employer within the purview of the Act, and any employee whose activities were substantially related to the production process is a covered employee, unless exempt. The defendants violated the Fair Labor Standards Act by failing to pay the statutory minimum wages and by failing to pay time and one-half for hours worked in excess of forty hours in any week at the times and with respect to the employees delineated in the schedule, Exhibit 1.

This action was brought by the Secretary under Section 17 of the Fair Labor Standards Act (29 U.S.C. § 217).

As amended in 1961, the Section vests jurisdiction in the District Courts to restrain violations of Section 215, including "the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter." This action is contrasted with an action at law by an employee under 29 U.S.C. § 216(b) to recover unpaid compensation and liquidated damages or an action at law brought by the Secretary on the written request of an employee under 29 U.S.C. § 216(c) to recover unpaid minimum wages or unpaid overtime compensation. In such actions, the plaintiff has a right to judgment in accordance with the facts as established by a preponderance of the evidence.

■ This action under Section 217, however, is an action in equity appealing to the Court to employ its equitable powers to vindicate the public interest in fair labor standards. We are not primarily concerned with a particular employee's entitlement to a specific sum of money. We are peculiarly concerned with applying equitable considerations and remedies to the end that full compliance with the law will be enforced. So, it was held in Wirtz v. Jones (5th Cir., 1965), 340 F.2d 901, that the employer is not entitled to a jury trial in a Section 217 action inasmuch as the action was strictly in equity. And in Wirtz v. W. G. Lockhart Construction Co., N.D. Ohio, E.D., 1964, 230 F.Supp. 823, another Court reviewed the history of the legislation to determine its purpose and said:

"This remedy for securing unpaid wages was the original one provided for by the Act and it was and is thus rigidly controlled by statute. Because Section 16(c) was an inadequate remedy standing alone for affording employees relief from wage underpayments in the face of employee reluctance to personally initiate suit against their employer, Congress found it necessary to amend the Act in 1961 in order to permit the Secretary of Labor to institute back wage relief suits. See Senate Report 145, Eighty-seventh Congress, First Session, U.S. Code Congressional and Administrative News, p. 1620. In creating this extraordinary remedy in Section 17 of the Act, Congress did not, however, inhibit the injunctive powers of the Secretary with the kind of restrictions imposed in Section 16(c) actions, jurisdictional or otherwise, but rather *in a simple bold stroke gave the Secretary of Labor, through this 1961 Amendment, the right to appeal directly to the discretion of the Court in order to collect unpaid wages for all employees concerned when conditions of aggravation allegedly warranted such relief."* [Italics added.]

■ The equitable considerations which influence the Court in this case are the facts that defendants acted in good faith in the belief that the Purity French Bakery business did not come within the coverage of the Fair Labor Standards Act. A relatively minor (although legally substantial) portion (three and six-tenths) of defendants' gross production moved in interstate commerce, and the commencement of the interstate movements, i. e., the sales to the distributors, were purely local transactions completed by defendants in Reno, Nevada. Defendants had reasonable cause to believe that the business as conducted did not come within the Act, and defendants' violations of the Act were not wilful.

Since this Court's Findings of Fact on Separate Trial entered March 25, 1965, defendants have been aware of the ruling that the Purity French Bakery business is governed by the requirements of the Fair Labor Standards Act. Defendant Antonio Malfa testified that the company is now complying, but the Court is not heedless of his testimony that he still believes the business is not subject to the requirements of the Act.

■■ Accordingly, the Court will not issue an injunction directed toward enforcing payment of the unpaid minimum wages and unpaid overtime wages shown by the schedule, Exhibit 1, to have been due in 1962–1964. The public interest does not require it, and such an order

would constitute nothing more than an unwarranted penalty against the employer. An injunction issued under Section 217 is remedial and not punitive. Wirtz v. Burton Mercantile and Gin Company, 1963, E.D.Ark.N.D., 234 F.Supp. 825.

The Court will, however, enjoin future violations of the Act and will enter appropriate orders enforcing full compliance with the Act after March 25, 1965.

The attorneys for plaintiff are directed, within twenty (20) days, to submit an appropriate form of decree consistent with the views herein expressed and including a reservation of jurisdiction to restrain any withholding of payment of minimum wages or overtime compensation which may, upon investigation, be found to be due to employees since March 25, 1965.

The foregoing shall comprise the Court's Findings of Fact and Conclusions of Law.

### SUPPLEMENTAL OPINION

On March 30, 1966, the Court filed its Opinion herein declaring the relief to be awarded plaintiff. No judgment has been entered. On April 12, 1966, plaintiff filed a motion for reconsideration of the Opinion, hoping to persuade the Court that it had erred in refusing to require defendants, by injunction, to pay the unpaid minimum wages and unpaid overtime compensation found to be due in 1962–1964.

■■ Defendants argue, first, that there is no such motion as one to reconsider an opinion. True, such a motion is not mentioned in the civil rules which do not purport to give a name to every conceivable motion that might be made. It may well be that such a motion need not be entertained as a matter of right. There can be, however, no objection to a Court voluntarily entertaining any motion it wishes, so long as jurisdictional prerequisites are not violated. An opinion is not a final judgment or order and is subject to reconsideration until the final judgment or order in conformity therewith is entered. To the extent that the opinion constitutes the findings of fact and conclusions of law of the Court, the instant motion may be deemed one to modify them under Rule 52(b). We appreciate the opportunity thus afforded to reconsider a proposed decree which plaintiff deems to be patently wrong.

Plaintiff has filed well prepared and well considered memoranda in support of his contentions that the Court, having found the wage and hour violations to have occurred, would abuse its discretion if it should fail to enjoin defendants from withholding payment of the unpaid minimum wages and overtime compensation. The fact that we have not been persuaded does not detract from the value to the Court of the material so presented.

Plaintiff has demonstrated that most courts faced with a similar problem have enjoined withholding of payment of back wages. When a court has decided to issue such an injunction, the reasons it gives for doing so may not be very persuasive to a judge in a different case where the equities lie against such relief.

The history of 29 U.S.C. § 217 is interesting. In its original form, the section provided simply for injunctive relief "to restrain violations of section 215 of this title." On August 18, 1949, the Second Circuit decided the case of McComb v. Frank Scerbo & Sons (2 CCA 1949), 177 F.2d 137, holding that under the injunctive powers granted generally by Section 217, the Court had power to grant to the Administrator an injunctive order compelling the payment of unpaid overtime wages past due to employees under the Act. Three opinions were written by Judges Clark, L. Hand and Frank, the point of discussion being the effect of this holding upon the right of an employee to maintain his own action under Section 216 if such relief should be granted in an action by the Administrator. Differing dicta were expressed on this troublesome question. On October 26,

1949, Congress took charge (63 Stat. 919) and amended Section 217 to add the proviso: "Provided, That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action."

This condition continued until May 5, 1961 (75 Stat. 74) when Congress revised Section 217 so that it expressly permits the Court to restrain the further withholding of past due unpaid minimum wages or overtime compensation and by an amendment of Section 216(b), terminated the Section 216 right of an employee or of the Administrator at the written request of an employee to bring an action at law for unpaid compensation whenever the Secretary of Labor has filed an action under Section 217.

It is the final amendment to Section 216 which bothers plaintiff. He suggests that it proves Congressional intent that the Court really has no discretion with respect to the form of its decree under § 217, at least as to unpaid wages, because the right of action under § 216 has been destroyed. We cannot agree. If Congress had wished to give the Secretary a direct right of action at law for unpaid minimum wages or overtime compensation on behalf of deprived employees, it could easily have done so. The course it did choose, to amend the section providing equitable relief at the suit of the Secretary, demonstrates an intention to vest jurisdiction in the District Court to apply equitable considerations in fashioning a decree to do justice, as near as may be, in each particular case. The 1961 amendment to Section 217 reverted the law to its status in 1949 with the gloss of the *Frank Scerbo & Sons* decision upon it. The 1961 amendment to Section 216 takes care of the problem which so worried the Second Circuit Judges in that case that three opinions were written about it. After all, the employees in every case will have had ample opportunity to seek enforcement of their Section 216 rights before the Secretary will have been incited to commence a Section 217 action.

Plaintiff also suggests that "it would plainly exceed the bounds of judicial discretion" to deny the back wage remedy in this case. For to deny such relief in these circumstances would be to assure retention by the non-complying employer of his unlawfully acquired gains, thus placing "a premium on violations * * * and permitting precisely the unfair financial profit and advantage which the 1961 amendment to Section 17 was specifically designed to obviate." This argument was made without consideration for the practical exigencies of conducting a small business. It assumes that all businesses are conducted at a profit and that the additional overhead involved in back pay would not destroy that profit. Anyone familiar with current bankruptcy statistics can refute this assumption. No evidence was offered concerning the impact of a back wage order on this employer-defendant. The Court may take judicial notice of the proliferation of chain stores and interstate bakeries and their competitive influence upon a local entrepreneur. If this employer-defendant had known, or had reasonable cause to believe, that his employees were covered by the Fair Labor Standards Act, he could have made provision therefor by increasing prices or curtailing expenses. This, as we have found, was a borderline case of coverage, and the employer did not know, and had as much reason to believe he was not covered as that he was.

Under these circumstances, it is sufficient enforcement of the public interest to enjoin future violations. The original opinion is confirmed and the judgment will be entered accordingly.