## HEABURG v. INDEPENDENT OIL MILL, Inc.

### WADE v. SAME.

### Civil Actions Nos. 164, 167.

District Court, W. D. Tennessee, E. D.

Sept. 9, 1942.

H. T. Etheridge, Jr., of Jackson, Tenn., for plaintiffs.

E. J. Nunn, of Jackson, Tenn., and Christie Benet, of Columbia, S. C., for defendant.

BOYD, District Judge.

Motion and suggestions having been made for the amendment of the Findings of Fact and Conclusions of Law entered by this Court on the 5th day of August, 1942, and argument having been heard thereon, it is hereby ordered that the Findings of Fact and Conclusions of Law entered by the Court on the 5th day of August, 1942, be stricken and inserted in lieu

thereof revised Findings of Fact and Conclusions of Law which read as follows:

### Findings of Fact and Conclusions of Law

This is an action under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., seeking to recover certain overtime compensation.

### Findings of Fact

The Court finds as a fact that:

1. The defendant is a Tennessee corporation having its situs and principal place of business in Jackson, Madison County, Tennessee, within the jurisdiction of this Court.

2. The defendant was engaged in the "processing of cottonseed" at the place of employment where both of the plaintiffs at all times were employed.

3. In defendant's business in connection with the "processing of cottonseed" defendant was on October 24, 1938, and has continuously since that time been engaged in interstate commerce within the meaning of the Fair Labor Standards Act of 1938.

4. The defendant company in the operation of its cotton oil mill used bagging and ties with which to wrap and bind lint cotton, which is a by-product of its business. As an accommodation to its customers at irregular intervals, small quantities of bagging and ties were sold by the defendant. Defendant did not solicit sales of this nature and did not seek a profit on such sales. Regardless of cost to the defendant of bagging and ties same were sold by it at the market price, which frequently resulted in a loss to the defendant.

5. The defendant, as part of its business of "processing cottonseed," bought and sold bagging and ties. It bought its bagging and ties from a local jobber and same were shipped to the defendant from outside the State of Tennessee, delivered to it and stored at its mill in Jackson, Tennessee; same were then later sold to cotton ginners solely within the State of Tennessee, with the exception of an occasional sale to two or three cotton ginners in Mississippi who came to the defendant's place of business in Jackson, Tennessee, purchased said bagging and ties and had same delivered to them by the defendant at its place of business in Jackson, Tennessee, the purchasers transporting said bagging and ties to their respective gins in Mississippi in their own trucks. The defendant owned no trucks, delivered no bagging and ties by freight, express, motor truck, or otherwise. All sales and deliveries of bagging and ties made by the defendant were at its place of business in Jackson, Tennessee. The defendant's total sales of bagging and ties from October 24, 1938, up to and including the present time, from its place of business where both plaintiffs were employed, aggregated 1.1 per cent of its gross business for the same period of time; and not more than one-sixth of said sales of bagging and ties were made to ginners outside of the State of Tennessee. The sale of bagging and ties by the defendant and other employers similarly engaged in the "processing of cottonseed" had by universal custom become an integral part and necessary phase of the "processing of cottonseed." The sale of bagging and ties by the defendant and other employers similarly engaged was for the sole convenience of cotton ginners and not for profit.

6. Defendant had in its employ a commission agent at Booneville, Mississippi; his principal duty was that of buying cottonseed for defendant's account. Defendant, for purposes of accommodation and convenience to ginners in the State of Mississippi, stored and sold a small amount of bagging and ties in Booneville, Mississippi. Neither of the plaintiffs had any connection whatever with the sale of cotton bagging and ties or in the operation of the business at Booneville, Mississippi.

7. The defendant bought cottonseed twelve months in the year and disposed of the cottonseed products derived from the "processing of cottonseed" twelve months in the year. There was never a time when the defendant did not have cottonseed or cottonseed products on hand.

8. The defendant's plant in Jackson, Tennessee, at which the plaintiffs were employed was in operation continuously. The preparation and manufacture of cottonseed, commonly designated the "processing of cottonseed," was the primary and principal business of the defendant at its plant in Jackson, Tennessee. That period of the year in which the defendant was engaged in the preparation and manufacture of cottonseed is commonly known to the trade as the "crushing season." The season for the buying of cottonseed had its peak usually from September 1st to February 1st of each succeeding year. During the "dormant season," when the crushing of cottonseed

was not being done, the defendant was engaged in the cleaning, repair and maintenance of its machinery and buildings, the purchase and storage of cottonseed and the sale and delivery of its manufactured products.

9. Plaintiff, George T. Heaburg, Sr., was in the employ of the defendant on October 24, 1938, and continued in its employ until November 15, 1941. His duties were that of night watchman and night weigh clerk. During the time of his employment he worked twelve hours each day, seven days per week with a two weeks vacation each year, during which he received his usual compensation. Plaintiff Heaburg was paid at the rate of twenty-five (25) cents per hour from October 24, 1938, to October 24, 1939, and thirty (30) cents per hour from October 24, 1939, to November 15, 1941.

10. Plaintiff, James Paul Wade, was employed by the defendant at its plant in Jackson, Tennessee, prior to October 24, 1938, and continued in the employ of the defendant until April 7, 1941. His duties were that of day weigh clerk and stenographer. He was paid $85 per month from October 24, 1938, to September 1, 1940; he was paid $100 per month from September 1, 1940, to February 1, 1941; he was paid $85 per month from February 1, 1941, until the termination of his employment with the defendant on April 7, 1941. Plaintiff Wade, during the season of the year in which the defendant was receiving and storing the biggest portion of its cottonseed, towit, from September 1st to January 31st of each year, worked ten hours each day, six days each week. Plaintiff Wade, from February 1st to August 31st of each year, worked nine hours each day, six days each week except on alternate Saturdays when he worked only five hours. During the period of the year from September 1st to January 31st, plaintiff Wade worked approximately full-time on six Sundays. He was given two weeks vacation each year with pay.

11. The defendant did not compensate plaintiffs for work done in excess of forty-four (44) hours a week for the period from October 24, 1938, to October 24, 1939, and for work done in excess of forty-two (42) hours a week from the period from October 24, 1939, to October 24, 1940, and for work done in excess of forty (40) hours a week from October 24, 1940, to the respective dates of the termination of their employ-

ment, at the rate of one and one-half times the regular rate of pay for such overtime work.

12. The crushing season varies from year to year. The defendant's crushing seasons, insofar as is material in this litigation, were as follows: From the 22nd day of August, 1938, to the 17th day of May, 1939, inclusive; from the 9th day of August, 1939, to June 22nd, 1940, inclusive; from September 24, 1940, to August 30, 1941, inclusive, and from September 8, 1941, to June 18, 1942, inclusive. The defendant's dormant seasons, insofar as is material in this litigation were as follows: From May 18, 1939, to August 8, 1939, inclusive; from June 23, 1940, to September 23, 1940, inclusive, and from August 31, 1941, to September 7, 1941, inclusive.

13. The insurance carried by the defendant on its real and personal properties required the employment of a night watchman.

14. In the "processing of cottonseed," it is necessary, first, that same be cleaned and delinted. The hull is removed, the meats are separated, cooked and pressed, and the oil is extracted, leaving the cake, which is ground into meal.

## Conclusions of Law

The Court concludes as a matter of law that:

1. The Court has jurisdiction of the parties and the subject matter of this cause.

2. Defendant was and is engaged exclusively in the "processing of cottonseed" at its plant in Jackson, Tennessee, and is exempt under Section 7(c) of the "Fair Labor Standards Act of 1938" (29 U.S.C.A. § 201 et seq.) from the overtime provisions of the Act with reference to all of its employees employed at its plant in Jackson, Tennessee, during the season of the year in which it is engaged in the preparation and manufacture of cottonseed, commonly known as the "crushing season".

3. During the "dormant season" (when the defendant was not engaged in the preparation and manufacture of cottonseed), neither the employer nor the employees are engaged in the "processing of cottonseed", and the defendant is not exempt from the provisions of Section 7(a) of the Act relative to overtime payments.

4. The "dormant" season activities of the defendant, such as maintenance,

repair, clerical and sales work, while incidental to and connected with the defendant's business of the "processing of cottonseed" is not "processing" within the intent of the Act and is not sufficient to bring the employer within the exemption 7(c) during such period.

5. The term "processing cottonseed" as used in the Act refers only to that part of the defendant's business which has to do with the preparation and manufacture of cottonseed for the market, commonly known as the "crushing season", and all necessary laborers, watchmen and clerical help, etc., needed to effect same and is not intended as an exemption of the defendant's year-round business.

6. The sale of bagging and ties to ginners as a matter of accommodation and without profit as shown by the proof in this case, is not a separate business of the defendant, but is only a service which is incidental to that of "processing cottonseed." The handling of bagging and ties is an integral part and necessary phase of the "processing of cottonseed".

Counsel will prepare and submit appropriate decree.