Ignacio **GARCIA**

v.

**SWIFT & COMPANY.**

Civ. A. No. 66–B–67.

United States District Court
S. D. Texas,
Brownsville Division.

Oct. 27, 1967.

Hester & Toscano, Glen A. Barnard, Harlingen, Tex., for plaintiff.

Greenwood & Russell, Merrill W. Russell, Jr., Harlingen, Tex., for defendant.

GARZA, District Judge.

## MEMORANDUM AND JUDGMENT

This case involves the age-old problem of the employee who thinks he is entitled to overtime wages, and the employer who thinks he is not.

The Court has proper jurisdiction as a result of power conferred by Section 216(b) of Title 29, U.S.C., which is better known as part of the "Fair Labor Standards Act", hereinafter referred to as the Act. Jurisdiction is also proper pursuant to Section 1337, Title 28, U.S.C.

The Plaintiff, Ignacio Garcia, is claiming a violation by Defendant, Swift & Company, of Section 207 of the Fair Labor Standards Act, pertaining to maximum hours worked. To be more specific, the Plaintiff worked for the Defendant, roughly, from January 1, 1964, to September 30, 1965.

The Plaintiff alleges that during certain weeks he was not paid one and one-half times his regular rate for hours worked over forty, as prescribed by Section 207 of the Act.

The attorneys entered into a stipulation which is fairly conclusive of the fact questions.

The Plaintiff has chosen to stand on the stipulation, and claims coverage under the Act as a matter of law.

The Defendant has filed a brief and raised several defenses which must be explored.

The following are the questions which must be answered:

(1) Was the Plaintiff covered by the Act?

(2) Did the Plaintiff come under the class of employee exempted by § 207(c) of Title 29?

(3) Was the Defendant's failure to pay overtime to Plaintiff in good faith?

The Defendant has asserted two reasons why Plaintiff should not be held to be covered by the Act. Both are without merit.

The first of these involves § 213(b) of the Act, which exempts employees subject to regulation by the Interstate Commerce Commission.

A quote in the case of Shew v. Southland Corp., 370 F.2d 376 (5 Cir. 1966), readily answers this first question:

"3. The Interpretative Bulletin, in pertinent part, is found in Code of Federal Regulations, § 782.7(b) (2), and reads as follows:

"'(2) The Interstate Commerce Commission has held that transportation confined to points in a single State from a storage terminal of commodities which have had a prior movement by rail, pipeline, motor or water from an origin in a different State is not in interstate or foreign commerce within the meaning of Part II of the Interstate Commerce Act if the shipper has no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment. See Ex parte No. MC–48 (71 M.C.C. 17, 29). The Commission has specifically found that there is no fixed and persisting intent where (i) at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage. While Ex parte No. MC–48 deals with petroleum and petroleum products, the determina-

tion indicates that the same reasoning applies to general commodities moving interstate into a warehouse for distribution (71 M.C.C. at 27). Accordingly, employees engaged in such transportation are not subject to the Motor Carrier Act and therefore not within the section 13(b)(1) exemption. They may, however, be engaged in commerce within the meaning of the Fair Labor Standards Act.' "

It is clear from the stipulated facts that the Plaintiff does not come under regulation by the Interstate Commerce Commission, and is, therefore, not exempted by § 213(b) of the Act. As stated in the quote, an employee might not be subject to regulation by the Interstate Commerce Commission, but still be engaged in commerce within the meaning of the F.L.S.A.

From the record and stipulated facts, I find as a matter of fact that during the work weeks in question, Plaintiff was engaged in the production of goods for commerce as defined by the Act, and is, therefore, covered by the Act. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

The most difficult, and I think controlling, issue in this case is whether or not Defendant was exempted from the overtime provision of the Act, as provided by § 207(c). The important part of the section is as follows:

"(c) In the case of an employer engaged * * * in the processing of cottonseed * * *, the provisions of subsection (a) of this section shall not apply to his employees in any place of employment where he is so engaged; * * *."1

It is stipulated that the Plaintiff was paid all overtime at rates consistent with the Act, except no overtime rates at all were paid to Plaintiff during periods when Defendant was engaged in processing cottonseed.

If the Plaintiff is an employee who comes within the exemption, then he is not covered by the Act and is not due any overtime rates.

In general, this exemption is thought of more as an employer exemption than an employee exemption. In other words, you look more at what the employer's activities are than at the particular employee's activities.

That is not to say that it is an all-inclusive exemption.

The cases show that the duties and activities of the specific employee must bear some reasonable relationship to the employer's activity involving the exemption.

Our Plaintiff, as stipulated, was essentially employed as, and was in fact, a truck driver. He hauled the products produced by the processing, and also hauled cottonseed. The Plaintiff also hauled bagging and ties to ginners in the South Texas area.

Very few cases have dealt with cottonseed processing under Section 207(c).

The first case involved was Heaburg v. Independent Oil Mill, 46 F.Supp. 751 (D.C.1942). In this case one of the plaintiff employees was employed as night clerk and watchman. The other one was employed as day weight clerk and stenographer. The court held that these two employees and all other employees employed at the plant during the cottonseed processing season were subject to the exemption.

That court also held that the selling of bagging and ties to ginners is only a service which is incidental to that of processing cotton. The handling of bagging and ties is an integral part and necessary phase of the processing of cottonseed.

A second case dealing with the section is Abram v. San Joaquin Cotton Oil Co., 49 F.Supp. 393 (D.C.1943). This case involved similar facts as our own. The court discusses at length the legislation

1. The quoted provisions of Section 207 were amended by the Fair Labor Standards Act of 1966, effective February 1, 1967, 80 Stat. 830, subsequent to the period here in dispute.

involved. Its conclusion was that only the employees who perform the operation described in section 7(c), or who perform operations so closely connected therewith that they cannot be segregated for practical purposes, are covered. The following employees were held to come under the 7(c) exemption during the "processing" season: The chemist, tank loaders, ones who sprayed and heated the oil, janitor, &c. In this case all employees who worked at the mill during the processing season were included.

The third case is a U. S. Supreme Court case which does not deal with our particular exemption, but does deal with one of a similar nature. The 7(c) exemption pertaining to the * * * processing of sugarcane was the question in Maneja v. Waialua Agricultural Co., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040 (1955).

The court said this exemption extends to "employees in any place of employment where the processing is being carried on." It was held that employees making emergency repairs were exempted; also exempted were those cleaning the equipment during weekend shutdown and performing other tasks closely and intimately connected with the processing operation. Of course, this exemption was restricted to the processing season.

Two other cases are worthy of mention. The case of Wirtz v. Western Compress Co., 330 F.2d 19 (9 Cir. 1964), does a good job of explaining the problems involved in interpreting section 7(c). The section reads as an "employer's" exemption. The court in this case rejects a strict employer exemption theory. It is not all inclusive. All employees are not included in the exemption just because it is a ginning or compressing season.

On the other hand, the section has not been literally or narrowly construed. The statute was not intended just to exempt employees who were actually compressing the cotton, but all employees who worked at the plant, who performed activities which relate to the business of compressing.

The court in that case exempted those employees who loaded, unloaded, weighed, sampled, tagged and recorded, under the exemption of "compressing cotton."

In a recent Fifth Circuit case, Wirtz v. Osceola Farms Co., 372 F.2d 584 (1967), the court dealt with the same section 7(c). The only difference being the "processing of sugarcane", instead of "processing cottonseed."

The portion of the case which relates to our question held that Class I drivers were within the exemption of section 7(c). These Class I drivers spent part of each trip weighing and unloading at the mill. The drivers also picked up empties.

I think this is analogous to our drivers who hauled the processed products from the mill and also hauled the bagging and ties to various ginners from the mill. The Plaintiff also hauled planting cottonseed. Parties stipulated that the selling of the seed and bagging and ties was done solely to obtain cottonseed for processing.

These activities were closely related to the "processing" of cottonseed, and Plaintiff is thereby brought within the exemption of section 7(c).

Based upon these cases and the stipulated facts, it is my conclusion that the Plaintiff was covered by the 7(a) provision of the Act. However, during the processing season, he was exempted from the 7(a) provision by section 7(c). Plaintiff hauled the processed products. He delivered bagging and ties, which the *Heaburg* case held was an integral part of the processing of cottonseed.

Therefore, it is adjudged and decreed that the Plaintiff is not entitled to any overtime wages during the "processing" season, and his claim must fail. The Defendant was in good faith, and did not violate the overtime provisions of the Act.

It is therefore, ordered, adjudged and decreed that Plaintiff's case be, and it is hereby dismissed.

This constitutes the Findings of Fact and Conclusions of Law of the Court, and is a Final Judgment.